UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
Aleksandar Zunzurovski,                             Case Number: 23-4883
                                                    **Opposition**
                                                    **Motion Dismissal**
                          Plaintiffs                **Motion To Compel Arbitration**

-against-

Desmond C. Finger,
Michael Wright,
Nick Valentine,
Maria Katz,
John Loukas,
Jimmy Kim,
Michael Mueller, and
Mike Dobronski,
            Defendants
_____x


# THE PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO COMPEL ARBITRATION AND OR DISMISS THE PLAINTIFF'S UNJUST ENRICHMENT CLAIM

By:
Tyrone A. Blackburn, Esq.

## INTRO

Defendants bring this motion as a Hail Mary attempt to escape liability for their actions. As detailed herein and within Plaintiff's pleadings, Plaintiff filed a distinctly different lawsuit against the individual Defendants than the arbitration that was filed against nonparty Sapphire. For the reasons detailed below, Plaintiff respectfully requests that the Court denies the individual defendant's motion in its entirety and or grant Plaintiff leave to amend to correct any deficiencies the Court may see and to add an additional cause of action.

## STATEMENT OF FACTS

This is an action for monetary and declaratory relief to redress the Defendants' violation of the Plaintiffs' rights. The Plaintiff seeks relief for Unjust Enrichment. At all times relevant to this Complaint, the defendants were employees of Sapphire. Upon information and belief, the defendants worked as "Hosts" or managers of the dancers and junior staff during their employment with Sapphire.

On or about April 5, 2019, Maria Vasquez ("Vasquez"), a former dancer and employee of Sapphire, sat for a deposition ("Vasquez Depo") in a lawsuit she filed against Sapphire, James Mark Talla, Jeffrey Wasserman, and Glen Peter Bernardi. This matter was held before Arbitrator Martin F. Scheinman. During the Vasquez Depo, Plaintiff and non-signatory Defendants were named as "Hosts" who allegedly sexually harassed and or assaulted Vasquez.

On or about April 12, 2019, Natalia Titova ("Titova"), a former dancer and employee of Sapphire, sat for a deposition ("Titova Depo") in a lawsuit she filed against Sapphire, James Mark Talla, Jeffrey Wasserman, and Glen Peter Bernardi. This matter was held before Arbitrator Martin F. Scheinman. During the Titova Depo, Plaintiff and non-signatory Defendants were named as "Hosts" who allegedly sexually harassed and or assaulted Titova. Vasquez and Titova were awarded $1,375,000.00 at the end of their arbitrations.

On or about December 2016, Plaintiff filed a lawsuit against Sapphire ("P. Sapphire lawsuit") and David Michael Talla for FLSA and the regulations thereto and according to the NYLL (§ 650 *et seq.*) and the New York Commissioner of Labor's Wage Order (the "Wage Orders,") codified at 12 N.Y.C.R.R. 146 *et seq.*, based upon the following acts and/or omissions which Defendants committed: i. Defendants' failure to compensate Plaintiff for all hours worked at the statutory minimum wage as required by federal and State law and regulations; ii. Defendant's failure to

provide Plaintiff with spread-of-hours payments under 12 NYCRR 146-1.6 and 137-1.7; iii. Defendant's failure to provide Plaintiff with proper paystubs as required by NYLL § 195; and iv. Defendants' unlawful retention of tips and service fees under NYLL § 196-d.

The P. Sapphire lawsuit was brought before Arbitrator Martin Scheinman. At the end of P. Sapphire's lawsuit, Plaintiff was awarded $2,118,483.64 minus the $1,375,000.00 awarded to Titova and Vasquez. Minus $124,920 in attorney's fees charged regarding the sexual harassment claims by Titova and Vasquez. As evidenced by their deposition transcripts, the Plaintiff and non-signatory Defendants were named "Hosts" and or managers allegedly engaged in the acts that served as the basis of Titova and Vasquez's lawsuit. Yet, Plaintiff was the only Host and/or Manager required to foot the bill of the Arbitrator's award given to Titova and Vasquez. As a direct result, non-signatory Defendants were unjustly enriched by not equally contributing to any part of the $1,375,000.00 PLUS ATTORNEY'S FEES awarded to Titova and Vasquez and deducted from Plaintiff's Arbitrator's award.

The Plaintiff was not a named defendant in the Titova and Vasquez lawsuit against nonparty Sapphire. Yet, he was required to compensate nonparty Sapphire over 1.3 million dollars in contribution because of Titova and Vasquez's deposition testimonies. In those testimonies, Titova and Vasquez named the defendants engaging in the same behavior they accused Plaintiff of. This lawsuit was filed against the individual defendants for contribution because they were unjustly enriched due to Plaintiff paying 1.3 million dollars for actions they were accused of committing.

## ARGUMENT
**POINT I: STANDARD GOVERNING THIS MOTION**

The arbitration provision at issue here, which is contained in Plaintiff's employment agreement with nondefendant Sapphire ("Sapphire"), is subject to the Federal Arbitration Act ("FAA"). The FAA provides that a written arbitration provision in "a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Thus, "where a contract containing an arbitration provision 'affects' interstate commerce, disputes arising thereunder are subject to the FAA." *Diamond Waterproofing Systems, Inc. v. 55 Liberty Owners Corp.*, 4 N.Y.3d 247, 252 (2005).

Plaintiff's employment agreement affects interstate commerce, considering that, among other reasons, the contract contemplates Plaintiff working in Sapphire nightclubs throughout the United States, and he has done so. Accordingly, the FAA is applicable and federal common law controls. As held by the New York State Court of Appeals:

> In situations where the FAA is applicable, it preempts State law on the subject of the enforceability of arbitration clauses. Indeed, the provisions of the FAA are controlling even though the dispute itself may arise under State law. Thus, regardless of what our own State's policies or case law might dictate in other circumstances, we are bound by the policies embodied in the Federal statute and the accompanying case law, and our prior State law holdings remain independently operative only to the extent that they have not been preempted by Federal law and policy.

*Fletcher v. Kidder, Peabody & Co.*, 81 N.Y.2d 623,630-31 (1993) (internal citations omitted).

In addition, "[o]n a motion to compel arbitration, the standard the court applies is similar to the standard applied on a motion for summary judgment: If there is a dispute as to a material issue of fact, then a trial to resolve the issue of fact is necessary." *Di Martino v. Dooley*, No. 08 Civ. 4606, 2009 WL 27438 at *4 (S.D.N.Y. January 6, 2009). Because the legal standard on a motion to compel arbitration is similar to that of a motion for summary judgment, the Court may consider matters outside the pleadings. *Endriss v. EklofMarine Corp.*, No. 96 CIV. 3137, 1998 WL 1085911, at *2 (S.D.N.Y. July 28, 1998) (considering matters outside the pleadings submitted by the parties on a motion to dismiss and compel arbitration).

To the extent the Court does not consider matters outside of the pleadings, it must nonetheless accept the allegations in the Complaint as true. *Guyden v. Aetna, Inc.*, 544 F.3d 376,379 n. 1 (2d Cir.2008) ("When a court considers the motion to compel before discovery has taken place, and in the context of a motion to dismiss, it treats the allegations in plaintiffs' Complaint as true.")

Courts have also allowed discovery on issues of fact relating to arbitration clauses. *Moss v. BMO Harris Bank, NA.*, No. 13-CV-05438, 2014 WL 2565824 (E.D.N.Y. June 9, 2014) ("In a typical motion to compel arbitration ... some discovery may be allowable or necessary.")

**POINT II: PLAINTIFF'S CLAIMS ARE NOT SUBJECT TO ARBITRATION**

> It is well settled that arbitration is a matter of consent, not coercion. Specifically, arbitration is a matter of contract, and therefore, a party cannot be required to submit to arbitration any dispute to which [it] has not agreed so to submit. Thus, while the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting

the FAA was to make arbitration agreements as enforceable as other contracts, but not more so.

*Ross v. Am. Exp. Co.*, 547 F.3d 137, 143 (2d Cir. 2008) (internal citations and quotations omitted). A decision to arbitrate a claim must be "consciously made," because by agreeing to arbitrate, "a party relinquishes his courtroom rights, including that to subpoena witnesses, in favor of arbitration with all its well-known advantages and drawbacks." *Fuller v. Guthrie*, 565 F.2d 259,261 (2d Cir. 1974). Precisely because an agreement to arbitrate requires a party to relinquish such important rights, courts "should not 'override the clear intent of the parties or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.'" *Norcast S.AR.L v. Castle Harlan, Inc.*, No. 12 Civ. 4973, 2014 WL 43492 at *4 (S.D.N.Y. January 6, 2014) (internal citation omitted). Considering that arbitration provisions are creatures of contract, the determination of whether parties agreed to arbitrate a particular dispute turns on the language of the agreement. As held in *the Republic of Iraq v. ABB AG*, 769 F. Supp. 2d 605,609 (S.D.N.Y. 2011):

> When the matter hinges on the interpretation of a disputed contract provision, a court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use, and it should grant summary judgment when the words of the contract convey a definite and precise meaning.

(internal quotations omitted).

Here, the Plaintiffs did not consent to arbitrate any claim unrelated to his employment at Sapphire. Rather, the plain language of the arbitration provision in the Plaintiff's Employment Agreement does not cover claims of unjust enrichment, indemnification, or contribution:

> "By their signatures below, the parties hereto agree that any controversy, dispute; or claim arising out of Employee's employment at Sapphire, whether Contractual, in tort, or based upon statute, shall be exclusively decided by binding arbitration held pursuant to the Federal Arbitration Act ("FAA"), and shall be administered by a neutral arbitrator agreed upon by the parties, and that the Arbitrator shall be permitted to award any relief available in a court of law. The parties hereby waive any right to litigate such controversies, disputes, or claims in a court of law, and waive any right to trial by jury. Either party, without waiving any remedy, may seek from any court having jurisdiction any interim or provisional relief, including injunctive relief, that is necessary to protect the party's rights or property. In arbitration, all parties have the right to be represented by legal counsel, the Arbitrator shall permit reasonable discovery, the parties shall have the right to subpoena witnesses in order to compel their attendance at hearings and to cross-examine witnesses, the proceedings shall be conducted in accordance with rudimentary due process, and the Arbitrator's decision shall be in writing and shall contain findings of fact and conclusions

of law. The parties agree that the Arbitrator's decision will be final, subject only to review under the FAA. For any claims based upon statutory protections, Sapphire will pay all fees charged by the neutral Arbitrator. Any award by the Arbitrator may be entered as a judgment in any court having jurisdiction."

The parties agree that any judgment, order, or ruling arising out of a dispute between the parties shall, to the extent permitted by applicable law, award costs incurred for the proceedings and reasonable attorney fees to the prevailing party.

All claims or disputes between the parties (and any other persons or entities associated with Sapphire) will be litigated individually; the employee understands and agrees that he or she will not consolidate my claims with the claims of any other individual and will not seek class or collective action treatment for any claim that he or she may have; will not participate in any class or collective action against Sapphire or against any persons or entities associated with Sapphire. If at any time the employee is made a member of a class in any proceeding, he or she will "opt out at the first opportunity, and should any third party pursue any claims on the employee's behalf, the employee must waive my rights to any such monetary recovery.

This is the entirety of the Sapphires' arbitration provision. The words "contribution," "indemnification," or "unjust enrichment" do not appear anywhere in it. Nonetheless, despite this plain language, Defendants erroneously argue that this dispute is subject to mandatory arbitration based upon authority where, unlike here, the arbitration provisions expressly encompassed plaintiffs' claims. See Non-signatory Defendants' MOL, at pp. 9-11 (citing *Loc. Union 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 2023 WL 3214508, at *3-4 (2d Cir. 2023); *Donohue v. Cuomo*, 184 N.E.3d 860, 866 (N.Y. 2022); *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003-05 (N.Y. 2014). The FAA's "emphatic federal policy" favoring arbitration, *KPMG LLP v. Cocchi,* 565 U.S. 18, 21 (2011); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1418 (2019); *Catz v Precision Glob. Consulting*, 19 CIV. 7499 (ER), 2021 WL 1600097, at *7 (SDNY April 23, 2021); *Keyes v. Ayco Co., L.P., No.* 17-cv-955, 2018 WL 6674292, at *7 (N.D.N.Y. December 19, 2018); *Eatoni Ergonomics, Inc. v. Rsch. in Motion Corp.*, 633 F. Supp. 2d 109, 116 (S.D.N.Y. 2009); *Watson v. USA Today Sports Media Grp., LLC*, No. 17 CIV. 7098 (NRB), 2018 WL 2316634, at *2 (S.D.N.Y. May 8, 2018).

In all of these cases, the arbitration provisions specifically referenced claims for a myriad of actions, but none of them were related to unjust enrichment, contribution, or indemnification. This key distinction renders these authorities inapposite to our facts, especially considering that

the courts themselves acknowledged the importance of the arbitration provisions' inclusion of the claims being raised and decided to compel arbitration.

Unlike Defendants' case law, the arbitration agreement here does not clearly indicate that Plaintiff made a "conscious decision" to arbitrate claims of unjust enrichment and contribution pursuant to his employment agreement. *Fuller*, 565 F.2d at 261. To the contrary, there is no such indication whatsoever. The Second Circuit's decision in *Fuller* makes the point. In that case, Arlo Guthrie had agreed to perform at a venue pursuant to a standard musical services contract containing an arbitration provision. During the performance, Mr. Guthrie was alleged to have breached the contract by failing to complete his performance and also slandering the promoter on stage, who Mr. Guthrie claimed had not paid anyone involved in the production.

In *Fuller*, the Second Circuit confirmed that "absent a clear, explicit statement ... in the contract directing an arbitrator to hear and determine the validity of tort damage claims by one party against another, it must be assumed that the (parties) did not intend to withdraw such disputes from judicial authority." (Id., at 261).

The Court held that "[a ]lthough the agreement to arbitrate was undoubtedly intended to cover disputes arising from the character of Guthrie's performance and his payment for it, it is highly unlikely that the parties could have foreseen, no less intended, to provide a forum for wholly unexpected tortious behavior." *Fuller*, 565 F.2d at 261 (emphasis supplied). Notably, the Court reached this decision while fully "cognizant of the federal policy favoring arbitration and accept[ing] the standard rule of construction that arbitration agreements are to be liberally construed," yet nonetheless held that "federal policy alone cannot be enough to extend the application of an arbitration clause far beyond its intended scope." *Id*.

Essentially, Defendants contend that any cause of action sounding in tort that involves any agent or former employee of Sapphire (who is not a named defendant in this case), no matter how unrelated it is to the individual defendants' job description Plaintiff's employment contract, are subject to mandatory arbitration. The overwhelming weight of authority is to the contrary[1].

---

[1] See e.g., Deeringv. Graham, No. CIV. 14-3435,2015 WL424534, at *8 (D.N.J. January 30, 2015) ("plaintiffs NJLAD, assault, and sexual battery claims are not covered when one examines the contract terms, the surrounding circumstances, and the purpose of the contract."); Washington v. CentraState Healthcare Sys., Inc., No. CIV. 10-6279, 2011 WL 1402765, at *5 (D.N.J. April 13, 2011) (finding that "arising under" in an arbitration clause cannot encompass all possible torts, including assault and battery that could occur in the workplace); RN Solution, Inc. v. Catholic Healthcare West, 165 Cal.App.4th 1511, 1523-1524 (2008) (arbitration clause contained in a nursing services contract did not encompass the Plaintiff's sexual assault and battery claims.); Jones v. Halliburton Co., 583 F.3d228, 236 (5th Cir.2009) (employee's claims of assault and battery were not "related to" her employment and thus not

7

In sum, Plaintiff has a statutory right under the New York City Human Rights Law and Executive Law to have his claims heard in open Court, which is an essential matter of public policy in New York: "The governmental policy against unjust enrichment, and for equal contribution, or indemnification enjoys the highest statutory priority, based upon legislative findings that "However, one whose intentional act causes an unintended injury may be so indemnified….This is so because to allow such indemnity would violate the "fundamental principle that no one shall be permitted to take advantage of his own wrong." Pub. Serv. Mid. Ins, v. Goldfarb, 425 N.E.2d 810, 814 (N.Y. 1981). Plaintiff did not contract away that right by entering into an employment agreement with Sapphire (a nonparty) that does not call for the arbitration of unjust enrichment, contribution, or indemnification claims.

**POINT III: THE INDIVIDUAL DEFENDANTS LACK STANDING TO COMPEL ARBITRATION**

Desmond C. Finger, Michael Wright, Nick Valentine, Maria Katz, John Loukas, Jimmy Kim, Michael Mueller, and Mike Dobronski Other than nonparty Sapphire (collectively, the "Non-Signatory Defendants") contend that they can compel Plaintiff to arbitrate his claims against them even though they are not signatories to his employment agreement which contains the arbitration provision. The Non-Signatory Defendants are incorrect and lack standing to compel arbitration under an agreement they did not sign.

Perhaps most damning to the Non-Signatory Defendants' standing argument, the Employment Agreement glaringly fails to include any other Non-Signatory Defendants. Instead, the Employment Agreement explicitly states that the only parties to it are Plaintiff and Sapphire.

Clearly, if the parties intended that other Sapphire employees or officers would be entitled to rights under the contract, particularly its arbitration provision, they would have included language to that effect. See *Republic of Iraq*, 769 F. Supp. 2d at 614 ("had the parties intended to extend the right of arbitration, they would not have drafted an arbitration provision that singled out the 'Parties' and omitted any mention whatsoever of the Republic, as they did."); *McCarthy v. Azure*, 22 F.3d 351, 360 (1st Cir. 1994) ("A corporation that wishes to bring its agents and

---

arbitrable under the FAA); Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1516 (10th Cir. 1995) ("For example, if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract.").

employees into the arbitral tent can do so by writing contracts in general, and arbitration clauses in particular, in ways that will specify the desired result."). The failure to incorporate such language in Plaintiff's employment contract confirms that the Non-Signatory Defendants lack standing to compel arbitration of this dispute. *In re The Containership Co*., 2016 WL 2341363, at *12.

But even if the Employment Agreement did not expressly bar the Non-Signatory Defendants from piggybacking onto whatever arbitration rights nonparty Spphire may have, they still could not legitimately compel arbitration of Plaintiff's claims. The Second Circuit's decision in *Ross v. Am. Exp. Co*., 547 F.3d 137 (2d Cir. 2008), is illustrative. There, American Express ("Amex") was sued in an anti-trust class action lawsuit brought by cardholders who had entered into cardholder agreements with financial services companies other than Amex. In response, Amex sought to compel arbitration pursuant to arbitration provisions contained in the cardholder agreements to which Amex was not a signatory. In holding that Amex could not compel arbitration under such circumstances, the Second Circuit cautioned that "the purpose of Congress in enacting the FAA was to make arbitration agreements as enforceable as other contracts, but not more so[,]" and this "principle renders problematic any holding that the plaintiffs can be compelled to arbitrate with Amex. Arbitration is a matter of contract, but the plaintiffs have not entered into any contract whatever with Amex, let alone any contract containing an arbitration clause." (Id., at 142-43).

As reflected in *Ross*, the federal presumption in favor of arbitrability "has never been extended to claims by or against non-signatories" in actions unrelated to the contract containing the arbitration provision. *Devon Robotics v. DeViedma*, No. 09-cv-3552, 2012 WL 3627419 at *9 (E.D.Pa. August 23, 2012). Courts "will allow a non-signatory to invoke an arbitration agreement only in rare circumstances." *Devon Robotics*, at *9. The Second Circuit has identified the following five rare circumstances where a non-signatory can possibly have standing to compel a signatory to arbitrate: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Thomson-CSF, S.A. v. Am. Arbitration Ass 'n, 64 F.3d 773.776 (2d Cir. 1995). The Non-Signatory Defendants incorrectly argue that they can compel Plaintiff to arbitrate under two of these "rare circumstances."

**First**, the Non-Signatory Defendants rely upon an "estoppel theory," pursuant to which "[nJon-signatories may have standing to compel arbitration against a signatory, thereby estopping the signatory from avoiding arbitration, when the issues which the non-signatory wants to resolve

are intertwined with the agreement that the signatory signed." *Devon Robotics*, at * 10. However, an estoppel theory does not apply to our facts, where the Defendants' tortious conduct is neither related to Plaintiffs' employment agreement nor his duties at nonparty Sapphire. Put another way, Plaintiff's claims are not "intertwined" with his employment agreement with nonparty Sapphire. (Id.).

> As elucidated by the Second Circuit in *Thomson-CSF, S.A.*:
>
> Estoppel cases all involve claims that are integrally related to the contract containing the arbitration clause. The same cannot be said of the case at hand .... E & S's claims against Thomson amount to the assertion that Thomson purchased Rediffusion to eliminate it as a competitor. While a cause of action may lie against Thomson for such. Alleged predatory business practices, the violation can hardly be characterized as arising out of or being integrally related to the Working Agreement between E & Sand Rediffusion. Thus, the analogy to this line of estoppel cases again must fail.

64 F.3d at 779-80 (emphasis supplied)[2].

**Second**, the Non-Signatory Defendants argue that they have standing to compel arbitration under an agency theory. Nonetheless, agents can only invoke an arbitration agreement entered into by their employer "to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation." *Hirschfeld Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 1056 (1996). In other words, a non-signatory to an agreement may only compel arbitration when "the parties have a sufficient relationship to each other and to the rights created under the agreement." *Contec Corp. v. Remote So., Co.*, 398 F.3d 205, 209 (2d Cir. 2005) (emphasis supplied). That scenario is simply not present here, where the Non-Signatory Defendant's conduct and unearned benefit are unrelated to the Non-Signatory Defendants' actions "in their capacities" as agents of nonparty Sapphire. *See Hirschfield*, 88 N.Y.2d at 1056.

The cases cited by the Non-Signatory Defendants are materially distinguishable precisely because in all of those decisions, the claims being asserted against the non-signatories arose out of

---

[2] *See also Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, No. 00 CIV. 4730, 2000 WL 1858556, at *6 (S.D.N.Y. December 19, 2000) (Schwartz, J.) ("Because there is only a loose nexus between Orange's claims against Nambe and Target in this action and the Orange-Zeisel Agreement, the Court declines to estop Orange from pursuing its claims here.") (*citing Thomson*, supra, 64 F.3d at 70); *Massen v. Cliff*, No. 02 CIV. 9282, 2003 WL 2012404, at *4 (S.D.N.Y. May 1, 2003) (Pitman, MJ.) (Real estate salesperson seeking brokerage commissions from Corcoran and one of its real estate agents individually could not compel the individual agent to arbitrate pursuant to an arbitration provision contained in the sales person's contract with Corcoran).

the agreements that contained the arbitration provisions[3]. In contrast to this authority, Plaintiffs' claims for contribution and unjust enrichment are based on the outcome of an unrelated case that Plaintiff was not a named defendant yet was required to pay contribution to nonparty Sapphire based on claims that were statutory in nature and are founded upon the conduct of the non-signatory defendants who were employees of nonparty Sapphire that was decidedly outside the scope of their employment. As a result, Plaintiff is not suing for a breach of his employment agreement, which contained the arbitration provision. Fundamentally, Plaintiff would be entitled to bring these claims even without the existence of the contract.

## **POINT IV: PLAINTIFFS CLAIMS ARE <u>NOT</u> BARRED BY CLAIM AND ISSUE PRECLUSION**:

Plaintiff's claims are not barred by claim preclusion, as the defendants in this action were not named defendants in Plaintiff's arbitration against nonparty Sapphire. Furthermore, the claim in this litigation arises from the Arbitrator's award, which was granted at the end of the arbitration. There is no way that Plaintiff could have anticipated and or forecasted the Arbitrator holding him solely responsible for the claims raised by the Titova and Vasquez lawsuit, which was unrelated to Plaintiff's arbitration against nonparty Sapphire.

In this case, Plaintiff only follows nonparty Sapphire's lead by filing a separate cause of action for indemnification/contribution for an arbitrator's award. Nonparty Sapphire did not file a leave to amend or request that the Arbitrator allow them leave to add Plaintiff as a third-party defendant in the Titova and Vasquez lawsuit. Yet, they want to impose that requirement on the Plaintiff in the nonparty Sapphire arbitration. The hypocrisy is breathtaking.

---

[3] See e.g., *Roby v. Corporation of Lloyd's*, 996 F.2d 1353 (2d Cir. 1993) (breach of contract claims against non-signatory employees and agents of syndicates were subject to mandatory arbitration because the alleged misconduct was within the scope of the agreements sued upon in the lawsuit); *Pritzker v. Merrill Lynch, Pierce, Genner & Smith, Inc*., 7 F.3d 1110 (3d Cir. 1993) (non-signatory employees of a principal were bound under an arbitration clause for claims for breach of a cash management agreement that was directly at issue in the dispute); *Arnold v. Arnold Corp. Printed Commc'ns for Bus*., 920 F .2d 1269 (6th Cir. 1990) (non-signatory officers of corporation entitled to mandatory arbitration for claims arising out of a stock purchase agreement containing the agreement to arbitrate); *Letizia v. Prudential Bache Securities, Inc.,* 802 F.2d 1185 (9th Cir. 1986) (non-signatory employees bound by arbitration clause for claims arising from a brokerage agreement); *Amisill Holdings, Ltd. v. Clarium Capital Mgmt. LLC,* 622 F. Supp. 2d 825 (N.D. Cal. 2007) (non-signatory officers and managers of company could enforce arbitration provision with respect to breach of contract claims arising out of operating agreement); *Zuckerman v. CB Richard Ellis Real Estate Servs., LLC*, 2013 NY Slip OP 30997(U) at *13 (Sup. Ct. N.Y. Cty. May 3, 2013) (enforcing arbitration provision under an employment agreement because Plaintiff s claims of unpaid commissions were "central to the Employment Agreement").

As is the case here, the Plaintiff was not a named party in the Titova and Vasquez lawsuit. The plaintiff was not mentioned anywhere in the Titova and Vasquez lawsuit pleadings. It was not until the Plaintiff filed suit against nonparty Sapphire for stolen wages that Sapphire sought indemnification from the Titova and Vasquez lawsuit. If issue preclusion applies here, it should have applied in Plaintiff's arbitration against nonparty Sapphire. Defendants cannot have it both ways.

Claim preclusion is tempered by the recognition that two or more different and distinct claims or causes of action may often arise out of a course of dealing between the same parties ... [and a] party's choice to litigate two such claims or causes of action separately does not bar his assertion of the second claim or cause of action." *Matter of Reilly*, 45 NY2d at 28-29. Thus, "[i]n properly seeking to deny a litigant two 'days in court,' courts must be careful not to deprive him of one." *Id*. at 28 *Clark v. Beth Israel Med. Ctr.*, 2011 NY Slip Op 30089(U), ¶ 9 (Sup. Ct.).

Here, the parties are different, and the claims are different. This is evidenced by the settlement agreement between nonparty Sapphire and Plaintiff, which the non-signatory defendants presented. This settlement agreement was specifically relegated to Plaintiff's NYLL and FLSA claims against nonparty Sapphire. It did not mention indemnification, unjust enrichment, or contribution. And more glaringly, the non-signatory defendants were not mentioned in the settlement agreement, nor did they sign it.

Even weaker is the non-signatory Defendants' argument that the Plaintiff's claims are barred due to issue preclusion. As previously stated, the defendants in this action were not named defendants in Plaintiff's arbitration against nonparty Sapphire. The issues raised by Plaintiff in this lawsuit were not raised in a previous pleading against the individual defendants.

Collateral estoppel, or "issue preclusion," is invoked when the cause of action in the second proceeding is different from that in the first and applies to a prior determination of an issue that was actually and necessarily decided in the earlier decision. It is confined to the point determined and applies only to issues that were litigated, not to those that could have been litigated. *Manitou Sand & Gravel Co. v. Ogden*, 81 A.D.2d 1019, 1019, 440 N.Y.S.2d 140, 141 (App. Div. 1981). An action involving different issues and other parties is not subject to collateral estoppel, even if the claim in the second action and that in the first stems from the same incident. *Gentile v. Cnty. of Suffolk*, 711 F. Supp. 724, 725 (E.D.N.Y. 1989).

As the defendants noted, the Plaintiff only requested a modification of the Arbitrator's award, reducing the Plaintiff's indemnification reasonability based on Plaintiff's belief that:

> The Arbitrator should modify the portion of the award providing Sapphire $1,031,250 (75% of the settlement) for indemnification for the settlements Sapphire entered into with Natalia Titova and Maria Vasquez. The award expressly concluded that the Claimant was only responsible for a portion of settlements, and indemnification is not permitted when responsibility is shared. Further, because the award acknowledged that the Claimant is not responsible for the entire proceeding brought by Mses. Titova and Vasquez, he is also not responsible for the attorneys' fees and costs Sapphire incurred, or at a minimum, the fees and costs should be reduced by 25% to $93,690. By the terms of the award, it is not final until Sapphire makes the payments required under the award, which Sapphire has not yet done, and therefore, the award can still be modified. Alternatively, the Claimant's request constitutes a request to modify the Award under CPLR § 7509.

Nothing in Plaintiff's request named the non-signatory defendants and or requested indemnification from the nonparty defendants. Plaintiff specifically requested that the award be reduced to zero as Plaintiff believed the Arbitrator erred in awarding any contribution to nonparty Sapphire.

First, "[t]he doctrine applies only where the issue in the second action is identical to an issue which was raised, necessarily decided[,] and material in the first action." *Simmons*, 170 N.E.3d at 737; see *Ryan v. N.Y. Tel. Co*., 62 N.Y.2d 494, 467 N.E.2d 487, 490, 478 N.Y.S.2d 823 (N.Y. 1984) ("What is controlling is the identity of the issue which has necessarily been decided in the prior action or proceeding. Of course, ***the issue must have been material to the first action or proceeding and essential to the decision rendered therein***."). Second, the party seeking to relitigate an identical issue must have "had full and fair opportunity to litigate the issue in the earlier action." *Simmons*, 170 N.E.3d at 737. *Emergency Physician Servs. of N.Y. v. UnitedHealth Grp., Inc*., No. 20-cv-9183 (JGK), 2023 U.S. Dist. LEXIS 59319, at *34 (S.D.N.Y. April 4, 2023).

As stated above, the issue raised by Plaintiff in the arbitration with nonparty Sapphire was focused on the Arbitrator reversing its decision to require Plaintiff to indemnify nonparty Sapphire. The issue of indemnification, contribution, or unjust enrichment related to the non-signatory defendants was never raised by the Plaintiff and was never considered by the Arbitrator. The issues in this case, and the ones adjudicated in arbitration between the nonparty Sapphire and Plaintiff, are distinctly different.

Finally, the defendants point to Plaintiff's settlement agreement with nonparty Sapphire as proof that Plaintiff settled the claims raised in this litigation. The plain text of the settlement agreement states otherwise. In the relevant part, the settlement agreement states:

> **Release**. In exchange for and in consideration of the covenants and promises contained herein, Petitioner to bind his affiliates, successors, assigns, beneficiaries, heirs, executors, administrators, parents, subsidiaries, affiliates, employees, officers, directors, stockholders, partners, members, representatives, attorneys, agents, lenders, and all persons, companies and/or affiliates acting by, through and under or in concert with any of them, hereby irrevocably and unconditionally releases, waives and forever discharges Respondents and their parents, subsidiaries, partners, members, representatives, attorneys, agents, (collectively, the "Releasees"), of and from any and all actions and causes of action asserted by Petitioner in the Action, Arbitration or Article 75 [ claims under the New York Labor Law and Fair Labor Standards Act]. It is the intention of the Parties that this paragraph 2 shall be a release in all respects as to each and every matter released herein and shall be effective as a bar to each and every matter released herein and that, should any proceeding be instituted with respect to matters released herein, this agreement shall be deemed in full and complete accord, satisfaction and settlement of any such released matter and sufficient basis for its dismissal.
>
> **Dismiss the Action and Article 75 with Prejudice**. For and in consideration of the Settlement Sum detailed in paragraph l(A) of this Agreement, which Petitioner acknowledges to be sufficient consideration to support this Agreement, Petitioner shall withdraw, in writing, and secure the dismissal with prejudice, of all complaints, suits, actions, charges, claims, and/or proceedings he has instituted against Respondents, including, but not limited to, the Claims. Petitioner hereby warrants that he has not filed or caused to be filed and is not presently a party to any charge, Complaint, appeal, suit, action, allegation, claim, and/or proceeding against Respondents in any form or forum other than the Action, Arbitration, and Article 75, which he agrees to dismiss with prejudice. To that end, within five business days of the payment of the Settlement Sum, Petitioner authorizes his counsel to execute a Stipulation of Dismissal and Order, in the form set forth hereto as Exhibit A, and to cooperate with Respondents as required in ensuring the dismissal of the action and the Article 75 with prejudice.

Nothing in the aforementioned sections of the settlement agreement between Plaintiff and nonparty Sapphire waived Plaintiff's rights to seek contribution, indemnification, or an unjust enrichment claim against the non-signatory defendants. The only claims released by Plaintiff are his "Article 75 [ claims under the New York Labor Law and Fair Labor Standards Act]" claims. Under the State of New York law, a release that is unambiguous on its face and which is knowingly and voluntarily entered into will be enforced. **However, a release may not be read to cover matters which the parties did not desire or intend to dispose of**. *Marom v. Gordon*, 2020 U.S. Dist. LEXIS 8763, at *1 (S.D.N.Y. Jan. 16, 2020).

14

Additionally, the non-signatory defendants were not signatories to the settlement agreement, and as stated above, the settlement agreement was limited to the NYLL FLSA causes of action. Plaintiff never brought an indemnification, unjust enrichment, or contribution cause of action against nonparty Sapphire or the non-signatory defendants. A settlement agreement will only bar a plaintiff from bringing claims **against someone who is not a party to the agreement** "if the parties to the settlement agreement in the first suit intended to release the nonparty." *Korenblum v. Citigroup, Inc.*, No. 15CV03383(JMF), 2015 U.S. Dist. LEXIS 140211, 2015 WL 6001275, at *2 (S.D.N.Y. October 14, 2015) (citation and quotation marks omitted); see also *Ferguson v. Ferrante*, 664 F. App'x 58, 60 (2d Cir. 2016) (applying [*9] New York law and holding that "claims against a nonparty to the [settlement] Agreement ... w[ere] not barred by the Settlement Agreement's release"). *Shangming Lu v. Diamond Nail & Spa CT Inc.*, No. 3:21CV01073(SALM), 2022 U.S. Dist. LEXIS 149365, at *8-9 (D. Conn. August 19, 2022).

**POINT V: PLAINTIFF PLAUSIBLY PLEADS A CAUSE OF ACTION FOR UNJUST ENRICHMENT**:

Plaintiff plausibly pleads a cause of action for unjust enrichment. According to the doctrine of unjust enrichment, the Plaintiff must show "(1) the other party was enriched, (2) at the other party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Buonasera v. Honest Co., Inc.*, 208 F. Supp. 3d 555, 567 (S.D.N.Y. 2016).

THE NON-SIGNATORIES WERE UNJUSTLY ENRICHED:

On or about April 5, 2019, Maria Vasquez ("Vasquez"), a former dancer and employee of Sapphire, sat for a deposition ("Vasquez Depo") in a lawsuit she filed against Sapphire, James Mark Talla, Jeffrey Wasserman, and Glen Peter Bernardi. This matter was held before Arbitrator Martin F. Scheinman. During the Vasquez Depo, Plaintiff and non-signatory Defendants were named as "Hosts" who allegedly sexually harassed and or assaulted Vasquez.

On or about April 12, 2019, Natalia Titova ("Titova"), a former dancer and employee of Sapphire, sat for a deposition ("Titova Depo") in a lawsuit she filed against Sapphire, James Mark Talla, Jeffrey Wasserman, and Glen Peter Bernardi. This matter was held before Arbitrator Martin F. Scheinman. During the Titova Depo, Plaintiff and non-signatory Defendants were named as

"Hosts" who allegedly sexually harassed and or assaulted Titova. Vasquez and Titova were awarded $1,375,000.00 at the end of their arbitrations.

On or about December 2016, Plaintiff filed a lawsuit against Sapphire ("P. Sapphire lawsuit") and David Michael Talla for FLSA and the regulations thereto and according to the NYLL (§ 650 *et seq.*) and the New York Commissioner of Labor's Wage Order (the "Wage Orders,") codified at 12 N.Y.C.R.R. 146 *et seq.*, based upon the following acts and/or omissions which Defendants committed: i. Defendants' failure to compensate Plaintiff for all hours worked at the statutory minimum wage as required by federal and State law and regulations; ii. Defendant's failure to provide Plaintiff with spread-of-hours payments under 12 NYCRR 146-1.6 and 137-1.7; iii. Defendant's failure to provide Plaintiff with proper paystubs as required by NYLL § 195; and iv. Defendants' unlawful retention of tips and service fees under NYLL § 196-d. The P. Sapphire lawsuit was brought before Arbitrator Martin Scheinman. At the end of P. Sapphire's lawsuit, Plaintiff was awarded $2,118,483.64 minus the $1,375,000.00 awarded to Titova and Vasquez AND ATTORNEY'S FEES OF $124,920.

As evidenced by their deposition transcripts, the Plaintiff and non-signatory Defendants were named "Hosts" and or managers allegedly engaged in the acts that served as the basis of Titova and Vasquez's lawsuit. Yet, Plaintiff was the only Host and/or Manager required to foot the bill of the Arbitrator's award given to Titova and Vasquez. As a direct result, non-signatory Defendants were unjustly enriched by not equally contributing to any part of the $1,375,000.00 awarded to Titova and Vasquez and deducted from Plaintiff's Arbitrator's award.

THE NON-SIGNATORIES WERE ENRICHED AT THE EXPENSE OF PLAINTIFF ZUNZUROVSKI:

Plaintiff Zunzurovski repeats and realleges all paragraphs above as though fully set forth herein. At the end of P. Sapphire's lawsuit, Plaintiff was awarded $2,118,483.64 minus the $1,375,000.00 awarded to Titova and Vasquez AND ATTORNEY'S FEES OF $124,920.

As evidenced by their deposition transcripts, the Plaintiff and non-signatory Defendants were named "Hosts" and or managers allegedly engaged in the acts that served as the basis of Titova and Vasquez's lawsuit. Yet, Plaintiff was the only Host and/or Manager required to foot the bill of the Arbitrator's award given to Titova and Vasquez.

As a direct result, non-signatory Defendants were unjustly enriched by not equally contributing to any part of the $1,375,000.00 awarded to Titova and Vasquez and deducted from Plaintiff's Arbitrator's award.

<u>IT IS AGAINST EQUITY AND GOOD CONSCIENCE TO PERMIT THE NON-SIGNATORIES TO RETAIN THE $1,375,000.00 STRIPPED FROM AND OWED TO PLAINTIFF ZUNZUROVSKI.</u>

As evidenced by their deposition transcripts, the Plaintiff and non-signatory Defendants were named "Hosts" and or managers allegedly engaged in the acts that served as the basis of Titova and Vasquez's lawsuit. Yet, Plaintiff was the only Host and/or Manager required to foot the bill of the Arbitrator's award given to Titova and Vasquez. The non-signatory Defendants engaged in the egregious prohibited conduct listed above. This caused Plaintiff Zunzurovski to suffer economic harm.

The non-signatory defendant's actions and omissions warrant an award of punitive damages. Suppose the Court believes that Plaintiff failed to plead sufficient facts or evidence to establish a claim for unjust enrichment. In that case, Plaintiff respectfully requests leave to amend so Plaintiff can replead and add additional facts and supporting evidence and to add cause of action.

Finally, Plaintiff plead his case pursuant to the requirements of Rule 8 of the FRCP as well as, "sufficiently particular" notice pleading standard of New York State. Rule 8 sets forth general rules of pleading and requires (1) "a short and plain statement of the grounds for the court's jurisdiction," (2) "a short and plain statement of the claim showing that the pleader is entitled to relief," and (3) allegations that are "simple, concise, and direct." Fed. R. Civ. P. 8. Rule 8 maintains a "threshold requirement that a complaint must contain a "plain statement" indicating that the Complaint possesses enough heft to "sho[w] that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (citing Fed. R. Civ. P. 8). *Wark v. J5 Consulting, LLC*, Civil Action No. 23-00266 (GC) (DEA), 2023 U.S. Dist. LEXIS 175934, at *5 (D.N.J. September 29, 2023).

Pursuant to CPLR 3013, the allegations of a complaint need not be set forth in detail; it is sufficient if the parties are put on notice of the underlying transactions or occurrences, and the material elements of the cause of action are stated." See CPLR 3013. It is well settled, that a claim is stated under New York's pleading standard when "the statements in the pleading, viewed with reason and liberality, are 'sufficiently particular' to give defendants notice of the plaintiffs' claims . . . and of the elements of plaintiffs' alleged cause of action." *See, Elson v. Elson,* 149 AD2d 141,

144, 545 NYS2d 31 (2d Dep't. 1989). *Wade Bishop v. Combe & Combe Prods., Inc., Defendants*, No. 520600/2019, 2020 N.Y. Misc. LEXIS 17948, at *6-7 (Sup. Ct. May 4, 2020).

Here, the Plaintiff pleaded his unjust enrichment claims pursuant to the standards set by Rule 8 of the FRCP, and NY CPLR 3013. As previously stated, if the Court believes that Plaintiff failed to plead sufficient facts or evidence to establish a claim for unjust enrichment. In that case, Plaintiff respectfully requests leave to amend so Plaintiff can replead and add additional facts and supporting evidence and to add cause of action.

## **POINT VI**: **PLAINTIFF REQUESTS LEAVE TO AMEND, AS LEAVE TO AMEND SHALL BE FREELY GIVEN**:

According to Federal Rule of Civil Procedure 15(a), Plaintiffs should be permitted leave to amend their Complaint. Federal Rule of Civil Procedure 15(a) provides:

> A party may amend the party's pleading once, as a matter of course, at any time before a responsive pleading is served… Otherwise, a party may amend the party's pleading only by leave of Court or by written consent of the adverse party, and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15(a). This and the other Federal Rules reject the approach that pleading is a game of skill in which one misstep by Counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. *Willard Dairy Corporation v. National Products Corporation*, 373 U.S. 934, 935, 83 S.Ct. 1534, 10 L.Ed.2d 691 (1963) (citing *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In considering a motion for leave to amend, the Court should examine the underlying facts and whether the Plaintiff should be permitted to test claims on the merits rather than the technical requirements of pleading. *In re ML-Lee Acquisition Fund II, L.P., and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Securities Litigation*, 848 F.Supp. 527, 567 (D. Del. 1994) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

The Plaintiff seeks to amend their Complaint to supplement viable facts, evidence, and causes of action against non-signatory Defendants. The Plaintiff is not acting in bad faith, with a dilatory motive, or delay. See *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993); also, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Foman v. Davis*, 371

U.S. at 182; *Enzo Life Sciences, Inc. v. Digene Corp.*, 270 F.Supp.2d 484, 487 (D. Del. 2003). On the contrary, Plaintiff is acting in good faith to place detailed facts on the record and to ensure that every cause of action that can be brought is raised. Plaintiffs believe the amended Complaint would survive a challenge under Rule 12(b)(6) and 9. See, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434. The plaintiffs seek to amend their Complaint to clarify legal allegations, add facts, and provide further detail and evidence to support their case.

Granting leave to amend the Complaint will not substantially delay this action in any way. This Motion is being filed early in this case. The proposed amended Complaint sets forth more specific facts and additional evidence supporting the Plaintiff's damages claims. For these reasons, the proposed amended Complaint satisfies Fed. R. Civ. 15(a).

**POINT VII: THE ROOKER-FELDMAN DOCTRINE DOES NOT APPLY**

The *Rooker-Feldman* doctrine is likewise inapposite given the present circumstances. Under *Rooker-Feldman*'s abstention, district courts "lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment." *Hachamovitch v. DeBuono*, 159 F.3d 687, 693 (2d. Cir. 1998). Because there was no state court judgment, *Rooker-Feldman*'s abstention does not apply. *Preacely v. AAA Typing & Resume, Inc.*, 2014 U.S. Dist. LEXIS 182946, at *25 (S.D.N.Y. April 28, 2014).

Here, Plaintiff is not asking this Court to review or reverse a state court decision. The claims in this case are being raised for the first time against these non-signatory defendants.

**CONCLUSION**

The Plaintiff requests the Court deny non-signatory Defendants Motion. If the Court is inclined to grant the non-signatory Defendant's Motion, the Plaintiff respectfully requests leave to amend to rectify any issues the Court identifies in the Plaintiff's pleading,

Dated: October 25, 2023

By: *Tyrone A. Blackburn, Esq.*
Tyrone Blackburn
*Attorney for Plaintiff*